```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**CARL BRUMFIELD,**

      **Plaintiff,**

v.                                         Civil Action No. 2:04-cv-01104

**JO ANNE B. BARNHART,**
**Commissioner of Social**
**Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

Plaintiff, Carl Brumfield (hereinafter referred to as "Claimant"), filed an application for DIB on November 23, 1998,

alleging disability as of July 25, 1996, due to hearing loss; diabetes; hypertension; high cholesterol; vision problems; arthritis in his leg, back and neck; and blocked arteries. (Tr. at 81-3, 95-103.)[1]  The claim was denied initially and upon reconsideration. (Tr. at 50-2; 61-3.) On March 29, 1999, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 64.)  The hearing was held on September 8, 2003 before the Honorable Andrew J. Chwalibog. (Tr. at 440-78.)  By decision dated October 28, 2003, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 15-22.)  The ALJ's decision became the final decision of the Commissioner on August 13, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 7-9.)  On October 13, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."

---

[1] Claimant had submitted a prior application for DIB on August 8, 1994, alleging disability as of December 20, 1993. (Tr. at 15, 260-3.)  This claim was denied by hearing decision of July 14, 1998.  (Tr. at 246-55.)  The Appeals Council denied Claimant's request for review.  (Tr. at 256-9.)

2

42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2003). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2003). The Commissioner must show two

things:  (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 16; Finding No. 2, tr. at 21.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of hearing loss, an eye impairment, and osteoarthritis.  (Tr. at 17-8.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 18; Finding No. 4, tr. at 21.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 19; Finding No. 7, tr. at 21.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 19; Finding No. 8, tr. at 21.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as a machine operator, a non construction laborer, a factory assembler, and hand finisher, which exist in significant numbers in the national economy.  (Tr. at 20.)  On this basis, benefits were denied.  (Tr. at ; Finding No. 14, tr. at 21.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was 58 years old at the time of the administrative hearing. (Tr. at 90, 440.)  He has a high school education. (Tr. at 101.)  In the past, he worked as a truck driver. (Tr. at 96.)

5

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary. The court notes that the relevant time period is July 25, 1996 (the alleged onset date, based upon the date of the decision denying Claimant's prior application) through December 31, 1998 (the date Claimant's insured status expired). (Tr. at 15, 16.)  Records outside that time frame are summarized for background information only.

During the years 1992 through 1996, Claimant treated with James W. Endicott, M.D. for symptoms of coronary artery disease, hypertension, and hyperlipidemia. (Tr. at 161-73; 392-5; 142-7.) These conditions appear to have been well-managed, with the exception of one occasion in 1994 when Claimant was admitted to St. Mary's Hospital for chest pain.  (Tr. at 400.)  A cardiac catheterization showed no significant coronary artery disease, mild insignificant plaquing of the left circumflex and the right coronary artery, and preserved left ventricular function. (Tr. at 402-3.)

Joseph B. Touma, M.D., F.A.C.S. performed an ear, nose and throat examination upon Claimant in June 1993.  (Tr. at 343-50.) After testing, Dr. Touma concluded that Claimant suffered moderate high frequency sensory neural hearing loss, noise included. Claimant maintained 100% speech discrimination in both ears. (Tr.

at 346.) Dr. Touma recommended that Claimant wear ear protection when he was around noise, and further recommended hearing aids. (Tr. at 346.)

Claimant was evaluated in January 1995 by John Richard Johnson, M.D. (Tr. at 384-8.) Dr. Johnson noted that x-rays of Claimant's lumbar spine showed minor degenerative changes, described as "probably normal for [Claimant's] age", and minor degenerative changes in Claimant's knees. (Tr. at 387.) Dr. Johnson diagnosed nystagmus, decreased auditory acuity, probable osteoarthritis, and obesity. (Tr. at 387.) He noted that Claimant's cardiac catheterization did not show any significant coronary artery disease; however, due to Claimant's angina, Dr. Johnson advised that he avoid heavy exertion. (Tr. at 388.)

Claimant's vision was evaluated in 1994 by Steven C. Wilson, O.D. (Tr. at 398.) In a March, 1995 letter to Claimant's attorney, Dr. Wilson summarized his findings as follows: Claimant's blood pressure measured 118/80; tonometry was 18/18; and he had constant horizontal nystagmus of both eyes during extraocular muscle evaluation. Dr. Wilson further noted that Claimant's pupils were PERRLA; his dilated fundus exam was unremarkable except for peripheral pigment epithelium disruption of peripheral retina on downgaze OS; his biomicroscopy was unremarkable except several cutaneous horns of both eyelids; and refraction yielded best visual acuities of 20/50- OD and 20/70+ OS. Dr. Wilson's only

7

recommendation was that Claimant obtain glasses. (Tr. at 398.)

On December 21, 1995, William B. Dennison, M.D. evaluated Claimant. (Tr. at 417-8.) Dr. Dennison observed that Claimant was a well-developed, well-nourished male in no acute distress. He noted the results of Claimant's heart catheterization. After detecting several joint abnormalities and decreased range of flexion in Claimant's lumbar spine, as well as crepitus in his knees, Dr. Dennison diagnosed osteoarthritis, for which he recommended over-the-counter Ibuprofen. (Tr. at 418.)

Treatment notes during the applicable period of July, 1996 through December 30, 1998 reveal that Claimant's hyperlipidemia and hypertension were continually medically managed by Dr. Endicott. (Tr. at 142-7; 159-61.)

On June 3, 1996, Dr. Endicott completed a Medical Assessment of Ability to Do Work-Related Activities (Physical). (Tr. at 426-8.) He stated that Claimant could lift 25 to 50 pounds occasionally, due to stiffness in his back and legs which caused pain with lifting, standing or walking for extended periods. He estimated that Claimant could stand and walk for a total of 4 hours in an eight-hour workday; without interruption, for 15-30 minutes. (Tr. at 426.) He noted that Claimant experienced stiffness and pain in his lumbosacral spine and knees with sitting for long periods of time; and opined that Claimant was limited to sitting 4 hours total, without interruption, for 30 minutes. (Tr. at 427.)

He opined that Claimant could occasionally climb, balance, stoop, crouch, kneel and crawl.  He was limited in these respects by knee and back pain, along with angina.  (Tr. at 427.) Dr. Endicott indicated that environmental conditions such as heights, moving machinery, temperature extremes, chemicals, dust, noise, and fumes could exacerbate Claimant's conditions.  (Tr. at 428.)

Dr. Endicott diagnosed Claimant with diabetes in June, 1998. (Tr. at 143.)

Claimant also submitted records from his family physician, Dr. Lon Lafferty, who began treating him in February 1999.  (Tr. at 203-8.)  Dr. Lafferty opined that Claimant had diffuse degenerative joint disease, hyperlipidemia, non-insulin dependent diabetes mellitus, coronary artery disease, hypertension, and depression. (Tr. at 203.) Claimant reported fatigue, depression, chest pain, and headaches. (Tr. at 203.)  Dr. Lafferty opined that Claimant's pain frequently interfered with concentration and attention, and that depression and anxiety affected his pain.  He concluded that Claimant was incapable of even low stress jobs, and that Claimant would be unable to attend work on a regular basis.  (Tr. at 204.) He opined that Claimant could sit or stand for 30 minutes at one time; and that he could stand or walk for less than 2 hours in a normal 8-hour work day.  He stated that Claimant must walk every 15 minutes, for 5 minutes at a time.  (Tr. at 205.) He indicated that Claimant would miss work more than four times a month due to his

9

impairments. (Tr. at 207.) Dr. Lafferty saw Claimant approximately once every three months. (Tr. at 203.)

Phil Pack, M.S., a psychologist, examined Claimant and completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) at the request of Claimant's attorney on December 15, 1999. (Tr. at 193-202.) Claimant scored in the average range of intellectual functioning upon the WAIS-R Verbal Scale. He exhibited mild symptoms of depression. (Tr. at 198.) Dr. Pack diagnosed adjustment disorder with depressed mood. (Tr. at 197.) He noted that Claimant's depressive symptoms related to substantial changes in his lifestyle, but that Claimant had developed his own coping strategies, was active in his church, and appeared to have supportive friends and family. (Tr. at 198.)

On the Medical Assessment, Dr. Pack indicated that Claimant had a good ability to follow work rules, relate to co-workers, and interact with supervisors. He had a fair ability to deal with the public, to use judgment, and to deal with work stresses. He had a poor to "no[]" ability to function independently. He had a good to fair ability to maintain attention and concentration. (Tr. at 200-1.) Dr. Pack further opined that Claimant had a fair ability to understand, remember, and carry out simple to complex job instructions; to behave in an emotionally stable manner; and to relate predictably in social situations. (Tr. at 201.) He had a poor ability to demonstrate reliability. (Tr. at 201.)

10

At the request of the ALJ, neuropsychiatrist Daniel Freedenburg, M.D. reviewed the record, issued a report, and completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form. (Tr. at 223-7.) He noted that Claimant had no mental impairments which were either diagnosed or treated during the relevant time period, with the possible exception of insomnia. (Tr. at 223.) He opined that Claimant had a good ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention/concentration. (Tr. at 225.) Claimant's ability to make performance adjustments as well as personal/social adjustments was rated as "good" in all respects. (Tr. at 226.)  Dr. Freedenburg found that Claimant's impairments did not affect any work-related activities.  (Tr. at 227.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to afford controlling weight to the opinions of Dr. Lafferty, Claimant's treating physician; (2) the ALJ erred in affording greater weight to the opinions of Dr. Freedenburg, a consultant, than to examining physician Phil Pack, M.D.; (3) the ALJ failed to consider the combined effects of Claimant's impairments. (Pl.'s Br. at 3-5.)  The Commissioner responds that the ALJ properly weighed the medical opinions and considered Claimant's impairments

in combination, and that the ALJ's decision was supported by substantial evidence. (Def.'s Br. at 10-3.)

   1.   *Opinions of Dr. Lafferty*

Claimant argues that the ALJ should have afforded controlling weight to the opinions of Dr. Lafferty, who became his treating physician after his eligibility period expired. He argues that, based upon Dr. Lafferty's opinions, he could work only a limited range of sedentary jobs[2], and would meet the requirements of Grid Rule 201.12 and/or 201.14. (Pl.'s Br. at 3-4.) However, a treating physician's opinion is afforded controlling weight only if two conditions are met: (1) it is supported by clinical and laboratory diagnostic techniques, and (2) it is not inconsistent with other substantial evidence. Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2)(2003). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) (2003).

While Dr. Lafferty was a treating physician, he did not begin treating Claimant until February, 1999, two months after Claimant's insured status expired. (Tr. at 208.) Dr. Lafferty's report was dated February 2000, fourteen months after Claimant's insured

---

   [2]   The vocational expert testified that the physical restrictions imposed by Dr. Lafferty would result in Claimant's ability to perform only a limited range of sedentary work, requiring frequent interruptions and breaks throughout the day. (Tr. at 447.)

12

status expired.  Dr. Lafferty nonetheless remarked that Claimant's difficulties "existed for months" prior to his initial treatment. (Tr. at 208.)

Dr. Lafferty's report is not well-supported and is inconsistent with (indeed, contradicted by) the remainder of the record.  Dr. Lafferty stated that Claimant suffered from coronary artery disease (tr. at 203); however, heart catheterization results indicated "no significant coronary artery disease."  (Tr. at 403.) Dr. Johnson detected no cardiac abnormalities upon examination in December, 1998 (two months before Dr. Lafferty saw Claimant) and described Claimant's EKG results as "essentially normal."  (Tr. at 153.)  Next, Dr. Lafferty indicated that Claimant had "diffuse osteoarthritis."  (Tr. at 204.) Dr. Johnson's report noted only "some osteoarthritis, but [Claimant's] main problem seems to be a right plantar fasciitis." (Tr. at 153.)

Next, Dr. Lafferty indicated that Claimant suffered "diffuse degenerative joint disease".  (Tr. at 203.) However, x-rays showed that Claimant had only minor degenerative changes in his lower back, described as "probably normal for his age", and minor degenerative or osteoarthritic changes in his knees. (Tr. at 152, 387.)

Dr. Lafferty stated that Claimant could walk less than one city block without needing to rest due to severe pain, and that Claimant's pain was severe enough to interfere with his attention

13

and concentration. (Tr. at 204-5.) Claimant, however, indicated on his pain questionnaire that he was able to do some lawn care, and that he did not have any problems concentrating. (Tr. at 109.) In addition, while one would expect Claimant to require prescription pain medications to alleviate the severe pain Dr. Lafferty described, Claimant was not taking any (tr. at 100, 151) and had only been advised to take over-the-counter Iboprofen. (Tr. at 418.)

Next, Dr. Lafferty indicated that Claimant could continuously sit for only 30 minutes at a time, and should elevate his legs with prolonged sitting. (Tr. at 205-6.) Claimant, however, indicated that he had no problems sitting as of the date of the hearing, December 6, 1999, just two months prior to the writing of Dr. Lafferty's report. (Tr. at 467, 452, 208.)

Finally, the limitations proposed by Dr. Lafferty are inconsistent with his course of treatment of Claimant. If Claimant were suffering the disabling impairments Dr. Lafferty suggested in 2000 (or during the preceding applicable time period), Claimant would have needed a far greater level of treatment than office visits every three months and medical management of his conditions. Yet there are no therapy notes, no consult notes, no pain management referrals, or anything of that nature.

Claimant argues that the ALJ's decision was not supported by substantial evidence because the ALJ failed to cite any reports showing that Claimant was not physically disabled. (Pl.'s Br. at 3-

14

4.) Claimant misunderstands the burden of proof. It is Claimant's burden to bring forth evidence establishing disability; if such evidence is absent or insufficient, a finding of not disabled must be made. The ALJ examined and summarized the medical evidence Claimant presented. (Tr. at 17-8.) He concluded that Claimant's eye impairment, osteoarthritis, and hearing impairment were severe, but that these alone or in combination were insufficient to establish a Listing. (Tr. at 18.) The ALJ's decision was based upon the records submitted by Claimant, and was supported by substantial evidence in this respect.

Likewise, while Claimant argues that the ALJ erred by failing to have him examined by a specialist subsequent to the Appeals Council's ruling, the Council did not specifically instruct that a physical examination be performed. (Tr. at 48.) Rather, the Council's concerns were that the former ALJ failed to evaluate Claimant's <u>mental</u> impairments correctly, and that newly submitted evidence pertaining to Claimant's mental status necessitated review. (Tr. at 47-8.) Indeed, the Order plainly stated, "[t]he Appeals Council finds that further evaluation of *the severity of the Claimant's mental impairment* is required." (Tr. at 47, emphasis added.) Had the Council likewise required re-evaluation of Claimant's physical complaints, it would not have limited its Order in this manner, but would have outlined its reasons for further review of Claimant's physical complaints.

As stated above, the ALJ's decision that Dr. Lafferty's opinions were unreliable was supported by substantial evidence. The ALJ also properly declined to rely on those portions of the vocational expert's opinions which were based on Dr. Lafferty's reports. As such, Claimant would not "grid out" as he presently argues.

2. *Opinions of Dr. Pack*

Claimant alleges that Dr. Pack was a treating physician and that his opinions should have been afforded controlling weight. (Pl.'s Br. at 4-5.) However, Dr. Pack examined Claimant one time at the request of counsel, with the specific purpose of preparing a report for his claim. (Tr. at 193.) Dr. Pack did not have the detailed, longitudinal picture of Claimant's condition which often warrants affording controlling weight to a treating physician's opinion. See 20 C.F.R. § 404.1527(d)(2) (2003).

Moreover, Dr. Pack's assessment took place almost one year after Claimant's insured status expired. (Tr. at 193.) The assessment is of little value to a determination of Claimant's condition during the relevant period. In fact, Claimant was not referred for and did not seek any mental health treatment from 1996 through 1998. (Tr. at 223.) This is a strong indicator that Claimant was not impaired by depression to a disabling degree during this time as he now alleges.

Claimant argues further that Dr. Pack's opinions are supported

by records from Logan-Mingo Mental Health, and should therefore be accepted. (Pl.'s Br. at 4-5; tr. at 231-45.) However, those records also post-date Claimant's insured status by four to five years, spanning the years 2002-2003. The court finds that these records give no insight whatsoever as to Claimant's mental status from 1996 through 1998.

### 3.   Combination of Impairments

Claimant's final argument is that the ALJ failed to consider his impairments in combination. (Pl.'s Br. at 5.) In support of his argument, he offers nothing more than the evidence from Dr. Lafferty and Dr. Pack, and states that if the vocational expert assumed these limitations, no gainful employment could be found. (Pl.'s Br. at 5.) For the reasons above, the opinions of Dr. Lafferty and Dr. Pack were properly discounted by the ALJ. The opinion as written indicates that the ALJ did indeed consider the impairments in combination. (Tr. at 17, acknowledging "combination of impairments" analysis; tr. at 18, "[t]aking all of the [C]laimant's impairments in combination, to include those deemed not severe, they do not meet or equal any of the impairments listed in Appendix 1"; Finding No. 3, tr. at 21.) The ALJ engaged in the proper analysis and his opinion was supported by substantial evidence.

The court proposes that the presiding District Judge find that the ALJ's decision was supported by substantial evidence in all

17

respects.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Summary Judgment, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

18

1984). Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

<u>September 21, 2005</u>             *Mary E. Stanley*
    Date                                Mary E. Stanley
                                             United States Magistrate Judge